**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>NARESH PATEL,<br><br>            Defendant. | Case No.: 1:16-cr-00181 JLT SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)<br><br>(Docs. 26, 36) |

Naresh Patel is a federal prisoner moving for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling medical circumstances. (Doc. 26.) On December 4, 2023, the Court referred Defendant's *pro se* motion to the Federal Defender's Office, counsel for which filed a supplemental brief on June 17, 2024. (Docs. 29, 36.) The Government filed an opposition on July 30, 2024, arguing that Defendant does not satisfy the "extraordinary and compelling" standard applicable to his request. (*See* Doc. 41.) Defendant, by and through appointed counsel, filed a reply on August 8, 2024. (Doc. 42.) For the reasons set forth below, Defendant's motion for compassionate release is **DENIED**.

**I.    Background**

On May 1, 2017, Defendant pled guilty to possession with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. § 841(a)(1). (Docs. 14, 16.) In advance of sentencing, the probation officer filed a Presentence Investigation Report. (PSR, Doc. 19.) The PSR

1

assigned an adjusted offense level of 28, which included a base offense level of 26 and a two-point increase under U.S.S.G. § 2D1.1(b)(1) for Defendant's possession of firearms. (PSR ¶¶ 12-13, 17.)[1] Defendant was deemed a career offender pursuant to U.S.S.G. § 4B1.1(a). (*See* PSR ¶ 18.) Accordingly, the 40-year statutory maximum sentence for Defendant's offense mandated an offense level of 34 pursuant to U.S.S.G. § 4B1.1(b)(2). (PSR ¶ 19; *see also id.* ¶ 90.) Defendant's offense level was reduced by three points based on his acceptance of responsibility, resulting in a total offense level of 31. (PSR ¶¶ 20-22.) Defendant was assessed 13 criminal history points based on multiple prior convictions and two status points were added for committing the offense while under a criminal justice sentence. (PSR ¶¶ 27-42.) This resulted in a total criminal history score of 15 and placed Defendant in criminal history category VI.[2] (PSR ¶¶ 43-44.) Based on Defendant's offense level and criminal history category, the advisory sentencing guidelines called for a term of imprisonment ranging from 188 to 235 months. (PSR ¶ 78.)

At the sentencing hearing, the Court adopted the findings in the PSR, with the exception of Defendant's base offense level, which the Court determined was 24, not 26 as listed in the PSR, based on the stipulated amount of methamphetamine (88.25 grams) involved in the offense. (Statement of Reasons (SOR) at 1.) Nonetheless, because the statutory maximum sentence resulted in an offense level of 34 pursuant to § 4B1.1(b)(2), Defendant's total offense level of 31 remained the same after applying the three-point reduction for acceptance of responsibility. (*See id.*)

For the reasons stated in Section VIII of the SOR, Defendant was sentenced to the statutory minimum of 188 months in custody, followed by a 60-month term of supervised release. (Doc. 24 at 2-3; SOR at 4.) He is currently incarcerated at Federal Correctional Institution, Lompoc I, with a

---

[1] As indicated in the plea agreement, the parties agreed that the quantity of methamphetamine possessed by Defendant was 88.25 grams, which resulted in a base offense level of 24. (*See* Doc. 14 at 9; Doc. 19-1 at 1.) The probation officer noted that this offense level "does not take into account the defendant being deemed a career offender. As such, his original offense level of 24 and his two-point increase for possessing firearms, which resulted in [an] offense level subtotal of 26[,] is essentially voided by the Chapter Four Enhancement which increases his adjusted offense level to 34." (PSR ¶ 90.) Instead, the probation officer assigned a base offense level of 26 based on Defendant's possession of a mixture and substance containing a detectable amount of methamphetamine totaling 202.35 grams. (PSR ¶ 12, citing U.S.S.G. § 2D1.1(c)(7).)

[2] Regardless, Defendant's status as a career offender automatically results in a criminal history category of VI under U.S.S.G. § 4B1.1(b). (*See* PSR ¶¶ 45, 90.)

projected release date of January 20, 2029. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed July 14, 2025).[3]

## II. Legal Standard

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)."

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022); *see also United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (if a court finds that extraordinary and compelling circumstances exist, it must then consider whether the § 3553 factors support a sentence reduction). The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

## III. Discussion and Analysis

### A. Administrative exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

---

[3] Defendant was incarcerated at FCI Pekin when he filed his original motion in February 2022. (*See* Doc. 26.) When his supplemental brief and reply were filed between June and August 2024, he was housed at FCI Gilmer. (*See* Docs. 36, 42.) At some point thereafter, Defendant was transferred to FCI Lompoc I.

receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[4] Defendant submitted his administrative request to the warden at FCI Pekin on August 3, 2021. (Doc. 26 at 24.) This request was denied on November 2, 2021. (*Id.* at 25.) Thus, as the Government concedes, Defendant has exhausted his administrative remedies. (*See* Doc. 41 at 3.)[5]

### B. Extraordinary and compelling reasons

The Sentencing Commission's policy statement outlines the circumstances under which "extraordinary and compelling reasons" exist to reduce a defendant's sentence, including the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." U.S.S.G. § 1B1.13(b)(1)-(6) (last amended Nov. 1, 2023). A defendant must show, and the Court must consider, "extraordinary and compelling reasons" according to the current version of U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[6]

#### 1. Medical circumstances

Defendant argues that his underlying medical conditions (diabetes, hypertension, and

---

[4] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response" to exhaust his administrative remedies. 28 C.F.R. § 542.15(a). If the Regional Director denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[5] *See, e.g., United States v. Velasco*, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) ("Since Velasco's request has been denied, he has exhausted his administrative remedies and is permitted to file this motion."); *United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding that because more than 30 days had elapsed since defendant filed his request to the warden for compassionate release, he satisfied the exhaustion requirement).

[6] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Ninth Circuit has not yet issued an opinion as to whether the recently amended § 1B1.13 is binding, but several district courts within this Circuit have treated it as such. *See, e.g., United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024) (collecting cases and concluding that "the current version of § 1B1.13 is binding"); *United States v. Naki*, 2024 WL 4145638, at *3 (D. Haw. Sept. 11, 2024) ("Since the amendments, *Aruda* is no longer good law to the extent that it held that the policy statements of the United States Sentencing Commission are not binding on motions for compassionate release.").

hyperlipidemia)[7] place him at high risk for complications should he contract the COVID-19 virus. (Doc. 26 at 5, 9; Doc. 36 at 2.) He also claims to be "particularly susceptible" to contracting the virus as a federal inmate who cannot practice social distancing. (*See* Doc. 26 at 9.) Defendant moves for a sentence reduction to time served on the basis that his medical circumstances meet the "extraordinary and compelling" criteria set forth by the U.S. Sentencing Commission in § 1B1.13(b)(1)(D). (Doc. 36 at 4.)

The Sentencing Guidelines establish that extraordinary and compelling reasons may exist for compassionate release based on the following medical circumstances:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is--

    (i) suffering from a serious physical or medical condition,

    (ii) suffering from a serious functional or cognitive impairment, or

    (iii) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances--

    (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing

---

[7] BOP medical records indicate that Defendant also suffers from gastroesophageal reflux disease without esophagitis (GERD). (*See* Sealed Doc. 40 at 61.) Defendant does not discuss this condition or otherwise claim that it is a "personal health risk factor" that increases his risk of complications from COVID-19. *See* U.S.S.G. § 1B1.13(b)(1)(D)(ii). He likewise does not assert that hyperlipidemia is a chronic disease that exposes him to great risks of severe illness or death from COVID-19. (*See* Doc. 36 at 2.)

outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

As specified in his supplemental brief and echoed in his reply, Defendant "plainly seeks 3582(c)(1)(A) relief under U.S.S.G. § 1B1.13(b)(1)(D)." (Doc. 36 at 4; Doc. 42 at 3.) For this reason, he challenges the Government's analysis, which is limited to Defendant's eligibility for relief under §§ 1B1.13(b)(1)(B) and (C). Indeed, none of the cases cited by the Government considered the medical circumstances set forth in § 1B1.13(b)(1)(D).[8] Nonetheless, the burden remains with Defendant to demonstrate that compassionate release is warranted in his case. *Wright*, 46 F.4th at 951. Upon consideration of Defendant's motion under the criteria set forth at § 1B1.13(b)(1)(D) of the U.S. Sentencing Guidelines, the Court concludes that Defendant has failed to carry his burden.

As to the first criteria outlined in § 1B1.13(b)(1)(D)(i), Defendant claims that "[b]y remaining in a BOP facility[,] he is house[d] at a correctional facility affected by an ongoing COVID-19 infection risk." (Doc. 36 at 4, internal quotation marks omitted.) However, he makes no showing that the BOP facility where he is housed is "affected or is at imminent risk of being affected by … an ongoing outbreak of infectious disease." U.S.S.G. § 1B1.13(b)(1)(D)(i).

---

[8] Amendment 814 to § 1B1.13, effective November 1, 2023, expanded the list of specified "extraordinary and compelling reasons" for compassionate release. *See Amendments to the Sentencing Guidelines*, U.S. Sent. Comm'n, Nov. 1, 2023, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. This included, *inter alia*, the addition of two new subcategories, (C) and (D), to the "Medical Circumstances of the Defendant" ground for relief. *Id.* at 8-9. The U.S. Sentencing Commission explained:

> The amendment incorporates several factors courts considered during the COVID-19 pandemic related to the defendant's individual health circumstances, the level of risk at the defendant's facility, and the ability to adequately mitigate the defendant's individualized risk. The public health emergency prong requires that the emergency be declared by the appropriate governmental authority. These new subcategories reflect the medical circumstances not expressly identified in §1B1.13 that were most often cited by courts in granting sentence reduction motions during the pandemic.

*Id.*

  The cases relied upon by the Government were decided between 2020 and 2022, prior to the addition of § 1B1.13(b)(1)(D), the subcategory invoked by Defendant. (*See* Doc. 41 at 4-5, citing *United States v. Miller*, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021); *United States v. Riddick*, 2022 WL 138074 (E.D. Pa. Jan. 14, 2022); *United States v. Ikehara*, 2020 WL 3065104 (D. Haw. June 9, 2020); *United States v. Aguilera-Quinjano,* 2020 WL 6083401 (M.D. Pa. Oct. 15, 2020); *United States v. Ayon-Nunez*, 2020 WL 704785, at **2-3 (E.D. Cal. Feb. 12, 2020).)

As of January 21, 2025, the Federal Correctional Complex in Lompoc, California (LOX) was reporting only one confirmed active case of COVID-19 out of a combined inmate population of 2,808. *See Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed July 14, 2025).[9] Moreover, FCC Lompoc is comprised of two facilities: FCI Lompoc I and II. FCI Lompoc I, where Defendant is confined, only houses 875 inmates, while the inmate population at FCI Lompoc II is 2,149.[10] Thus, there is a possibility, assuming there is currently an open case at FCC Lompoc, that the infected inmate is housed at FCI Lompoc II as opposed to with Defendant at FCI Lompoc I.

As such, Defendant has not demonstrated an "ongoing outbreak" at his BOP facility. *See, e.g., United States v. Fujinaga*, 2024 WL 4651068, at *3 (D. Nev. Oct. 31, 2024) (concluding defendant did not meet "ongoing outbreak" requirement where BOP data indicated only one active inmate case of COVID-19 at defendant's facility, and thus, susceptibility to COVID-19 alone was not extraordinary or compelling circumstance); *United States v. Lee*, 2024 WL 776726, at *2 (D. Mont. Feb. 26, 2024) (finding no current outbreak as required by § 1B1.13(b)(1)(D)(i) where defendant's BOP facility reported a single case out of an inmate population of 1,208); *United States v. Amezcua*, 635 F. Supp. 3d 997, 1010 (E.D. Cal. 2022) (finding no suggestion of extraordinary and compelling reasons based on risks posed to defendant by COVID-19 where BOP facility had only one confirmed active inmate case and one confirmed active staff case); *United States v. Brewer*, 2024 WL 2115926, at *2 (D. Nev. May 10, 2024) ("[T]here is no ongoing or imminent risk of an outbreak at Brewer's facility given that there are currently no covid cases reported there[.]").

Moreover, because Defendant is fully vaccinated and he has successfully recovered from COVID-19 on two occasions, his medical conditions—even if serious—do not present an increased risk of COVID-19 complications or death as required by § 1B1.13(b)(1)(D)(ii). *See, e.g., United States*

---

[9] As of the same date, FCI Pekin (PEK) was reporting zero cases among 1,274 inmates and FCI Gilmer (GIL) was reporting one case among 1,169 inmates. *Id.* The BOP's inmate data related to COVID-19 was last updated on January 21, 2025. Therefore, the Court cannot presently ascertain the number of active cases at any BOP facility.

[10] *See Inmate Population Statistics*, https://www.bop.gov/about/statistics/population_statistics.jsp (last accessed July 14, 2025). FCI Lompoc II is itself comprised of a low-security facility housing 1,849 inmates, and two adjacent minimum-security satellite camps that house 306 inmates collectively, for a total of 2,149 inmates. *Id.*

1  *v. Smith*, 2024 WL 1374722, at *2 (D. Mont. Apr. 1, 2024), *aff'd*, 2024 WL 4903693 (9th Cir. Nov.
2  27, 2024) (defendant did not meet requirements under § 1B1.13(b)(1)(D) because he did not
3  demonstrate "ongoing outbreak" at his BOP facility and he received COVID-19 vaccines while in
4  BOP custody); *Lee*, 2024 WL 776726, at *2 (defendant who successfully recovered from COVID-19
5  and was vaccinated in 2021 did not demonstrate "increased risk" of complications); *United States v.*
6  *Andrews*, 738 F. Supp. 3d 931, 936 (E.D. Mich. 2024) ("Because he received effective COVID-19
7  vaccines, Andrews' health risks from the virus no longer present an extraordinary and compelling
8  reason for release, even if he has serious medical conditions.").

9        Finally, having been vaccinated against COVID-19, Defendant's risk for serious complications
10  has been "greatly mitigate[d]." *See United States v. Mahan*, 2024 WL 710634, at *4 (D. Idaho Feb. 20,
11  2024), *aff'd*, 2025 WL 457099 (9th Cir. Feb. 11, 2025) (concluding defendant had not shown that his
12  risks could not be "timely mitigated" as required by § 1B1.13(b)(1)(D)(iii) because he had been
13  vaccinated, "which greatly mitigates his risk for serious complications if he were to be infected"); *see*
14  *also United States v. Lopez-Ontiveros*, 2025 WL 1115052, at *6 (S.D. Cal. Apr. 15, 2025) (concluding
15  that because defendant had already contracted COVID-19 and was fully vaccinated, his vaccination
16  significantly mitigate[d] the risk that he would contract the virus as well as the risk of severe
17  complications if he did contract it); *United States v. McCarns*, 2023 WL 5487428, at *2 (E.D. Cal.
18  Aug. 24, 2023) ("[A]lthough individuals with [chronic kidney disease] are at higher risk of severe
19  illness if they contract COVID-19, this risk is mitigated once the individual is vaccinated against
20  COVID-19, as McCarns is.").

21        Defendant argues that despite receiving the COVID-19 vaccine on March 1, 2021, March 23,
22  2021, and December 9, 2021, "[t]he prison has failed to mitigate [Defendant's increased] risk by
23  providing current vaccinations as recommended by CDC." (Doc. 36 at 2-4.) He asserts that his
24  vaccinations "are seriously out of date" and he "has never been offered any additional COVID-19
25  vaccination" by BOP. (*Id.* at 2-3; *see also* Sealed Doc. 40 at 48.)

26        However, in addition to the absence of evidence of an ongoing outbreak at Defendant's
27  facility, he fails to offer evidence supporting the contention that he was not offered a fourth dose of the
28

vaccine or that he requested one and was denied.[11] Thus, Defendant has not demonstrated that his heightened risk of complications "cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D)(iii); *see, e.g., United States v. Neal*, 2024 WL 1886476, at *4 (E.D. Cal. Apr. 30, 2024) ("[A]lthough defendant argues that he was provided a less effective COVID-19 vaccination and that he was not offered a Moderna or Pfizer-BioNTech booster shot, he does not assert that he had even asked the medical staff at FCI Talladega for a booster vaccination, let alone that he was denied such a booster."); *McCarns*, 2023 WL 5487428, at *3 (finding that although "individuals who are up to date on their booster doses will attain greater protection from COVID-19 and its variants," there was "no evidence of record supporting the conclusion the BOP ha[d] declined to give McCarns a booster dose"); *United States v. Lopez*, 2024 WL 3861331, at *4 (E.D. Cal. Aug. 19, 2024) (concluding that despite high test positivity rates in California and BOP's failure to keep defendant's vaccine status current, defendant had not "presented evidence of alarming rates of test positivity or, for instance, increased hospitalization of prisoners *at his place of confinement*" and noting that "it is … widely recognized that vaccination as well as effective treatments have very significantly reduced the number of individuals who become severely ill and require hospitalization after contracting COVID-19") (emphasis added). In sum, Defendant has failed to carry his burden of demonstrating that his medical conditions present extraordinary and compelling reasons to reduce his sentence as set forth at U.S.S.G. § 1B1.13(b)(1)(D).

### C.   Consistency with the § 3553(a) factors

Having concluded that Defendant's request is not supported by "extraordinary and compelling" reasons, the Court need not reach the § 3553(a) sentencing factors. *See Keller*, 2 F.4th at 1284 ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step"); *see also United States v. Kaneko*, 2024 WL 1018362, *3 (D. Haw. Mar. 8, 2024) ("[A] district court may deny a compassionate release motion based solely on a defendant's failure to show an 'extraordinary and compelling' reason for release.").

---

[11] Furthermore, because Defendant's most recent medical records date back to mid-2024, the Court cannot determine whether he has received a fourth dose of the vaccine at this point.

9

**IV.     Conclusion and Order**

Based upon the foregoing, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Docs. 26, 36), is **DENIED**.

IT IS SO ORDERED.

Dated:   **July 15, 2025**                                                   /s/ Jennifer L. Thurston
                                                                          UNITED STATES DISTRICT JUDGE